IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,
        Respondent / Plaintiff,

Vs.                      Case No. 02-40127-01-SAC
                                      06-3305-SAC

ALFREDO ROMAN-ROMAN,
        Petitioner / Defendant.

## MEMORANDUM AND ORDER

This case comes before the court on defendant Alfredo Roman-Roman's pro se Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255.  (Dk. 64-1, 64-2).  The government has filed a response in opposition to defendant's motion.  (Dk. 69).  Having reviewed all the matters submitted and having researched the relevant law, the court is ready to rule on the motion.

## Evidentiary Hearing

Defendant has requested an evidentiary hearing on his motion. (Dk.64-2, p.10).  Under 28 U.S.C. § 2255, "to be entitled to an evidentiary hearing ... [defendant] must 'allege[ ] facts which, if prove[n], would entitle him to relief." ' *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995), *cert. denied,* 517 U.S. 1235 (1996), *overruled on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001).  "[T]he allegations must be specific and particularized, not general or conclusory."  *Hatch*, 58 F.3d at 1471.  If, however,

"the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," this court need not grant defendant an evidentiary hearing because  the factual matters raised by the defendant's § 2255 petition may be resolved on the record before the court.  *See United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988).

Defendant has failed to allege specific and particular facts to support the issues raised in his motion.  Further, the files and records in this case conclusively demonstrate that defendant is not entitled to relief.  Therefore, defendant's prayer for an evidentiary hearing shall be denied.

## Factual Background

This case arises out of a traffic stop and subsequent drug seizure in 2002.  The details of the traffic stop may be found at *United States v. Roman-Roman*, 2002 WL 31928487 (D. Kan. 2002), *aff'd* 116 Fed. Appx. 994 (10th Cir. 2004), *remanded* 126 S. Ct. 410 (2005), *reaff'd* 172 Fed. Appx. 811 (10th Cir. 2006).

## Procedural Posture

In November of 2002, defendant was charged in a two-count indictment with one count of possession of more than 30 kilograms of methamphetamine with the intent to distribute and one count of conspiracy to

distribute methamphetamine.  He filed a motion to suppress which this court

denied.  *United States v. Roman-Roman*, 2002 WL 31928487 (D. Kan. 2002).

Defendant then entered a conditional guilty plea to count two of the indictment.

The Plea Agreement in this case provided, in pertinent part, that the possession

with intent to distribute charge would be dismissed, that defendant would maintain

his right to appeal the suppression issue, that he would receive the "low end"

sentence of the applicable guideline range, and that he would receive "safety

valve" consideration under U.S.S.G. § 5C1.2.[1]  A Pre-Sentence Report (PSR) was

completed prior to sentencing reflecting these conditions.  Neither defendant nor

the government filed objections to the PSR recommendations.  At sentencing, this

court adopted the recommendations of the PSR and the terms of the plea agreement

without oral objection from either the government or defense counsel.  (Dk. 60,

p.4-7, 9).  Defendant was sentenced to 135 months of incarceration in accordance

with the recommendations of the PSR.

Defendant's appeal eventually reached the United States Supreme

Court, which remanded his case to the Tenth Circuit to consider his sentence in

light of *United States v. Booker*, 543 U.S. 220 (2005).  The Tenth Circuit thereafter

---

[1]Unless otherwise noted, all citations to the Sentencing Guidelines
refer to the 2003 edition of the Guidelines because defendant was sentenced
in 2003.

3

reaffirmed defendant's sentence under *Booker* and issued a mandate finalizing his sentence on March 27, 2006. *United States v. Roman-Roman*, 172 Fed. Appx. 811 (10th Cir. 2006). Defendant filed the present motion on November 1, 2006, which the government concedes is timely. *See* 28 U.S.C. § 2255 ¶ 6.

## Arguments of the Parties

In his motion, defendant raises two issues, only one of which is live. Defendant's first claim is that counsel was ineffective because counsel failed to move this court to consider a "safety-valve" reduction under U.S.S.G. § 5C1.2. This court in fact applied "safety valve" consideration during sentencing in accordance with the PSR's recommendation. Therefore, defendant has already received the relief he now seeks, and his "safety-valve" claim is denied.

Defendant next claims that counsel was ineffective because counsel failed to ask this court to apply a role reduction under U.S.S.G. § 3B1.2 and Amendment 640, U.S.S.G. App. C, 265 (2003). The government counters that defendant cannot meet either prong of the ineffective assistance of counsel test identified in *Strickland v. Washington*, 466 U.S. 668 (1984). According to the government, counsel's strategic decision not to argue for a role reduction was reasonable, and defendant's claim therefore fails *Strickand*'s first prong. Second, the government argues that this court would not have granted the reduction even if

4

counsel had requested it, and defendant's claim therefore fails prejudice analysis under *Strickland*.  The government further argues that even if defendant was only a "mule," his role as a "mule" made him "indispensable" to the completion of the underlying crime, and he should therefore be denied a role reduction.

### Ineffective Assistance of Counsel Standards

The parties agree that the applicable standard in ineffective assistance of counsel claims is *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, defendant must show by a preponderance of evidence that counsel's performance fell below an "objective standard of reasonableness."  *Id*. at 688; *Sallahdin v. Mullin,* 380 F.3d 1242, 1247-48 (10th Cir. 2004).  "Review of counsel's performance under this prong is highly deferential," and there is a strong presumption that a challenged decision is soundly considered trial strategy. *Sallahdin*, 308 F.3d at 1247 (internal quotation marks and citation omitted). Therefore, this court does not speculate as to what may be prudent or appropriate, but instead considers only whether "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id*. (quoting *Strickland*, 466 U.S. at 687).  Defendant "bears a heavy burden" in overcoming the presumption that counsel in fact rendered reasonable assistance. *Fox v. Ward,* 200 F.3d 1286, 1295 (10th Cir. 2000).

5

If defendant can show that counsel's performance was objectively unreasonable, defendant must then show actual prejudice. *Strickland*, 466 U.S. at 694. He may do this by establishing a reasonable probability "sufficient to undermine confidence in the result of the proceeding" that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Le v. Mullin,* 311 F.3d 1002, 1025 (10th Cir. 2002) (quoting *Strickland*, 466 U.S. at 694). The court may address performance or prejudice in any order, and failure to meet either prong of the *Strickland* test is lethal to defendant's claim. *Cooks v. Ward,* 165 F.3d 1283, 1292-93 (10th Cir. 1998).

### Counsel's Actions Were Objectively Reasonable

Under *Stickland's* first prong, defendant alleges two errors: counsel's failure to gather mitigating evidence to support a motion for role reduction, and counsel's failure "to advocate [defendant's] case at sentencing." Defendant then calls counsel's alleged failure to move for a role reduction a "virtual [absence of counsel] at the sentencing stages of [his] trial" and attempts to avoid prejudice analysis under *Penson v. Ohio*, 488 U.S. 75 (1988). (Dk. 64-2, p.9).

Each of defendant's arguments fails. Defendant first cites *Rompilla v. Beard*, 545 U.S. 374 (2005), analogizing Rompilla's counsel's failure to investigate Rompilla's criminal history to defendant's own counsel's failure to

6

advocate regarding defendant's criminal history. (Dk.64-2, p.9). *Rompilla* is of no use to defendant, however, because in that case, even though counsel knew the government intended to introduce aggravating evidence from a previous conviction, counsel failed to make reasonable efforts to review the case file from the previous conviction to discover mitigating evidence. 545 U.S. at 389. Here, no analogous situation exists because defendant had no prior convictions for counsel to review. Defendant has not specified, and the court is unaware of, what mitigating evidence might have been available had counsel looked for it. Further, the PSR and testimony from the sentencing hearing reveal that this court applied a criminal history category of "I." This was the correct category to apply because defendant had no prior criminal history. U.S.S.G. § 5A. Therefore, this court finds that counsel's advocation of defendant's criminal history was not analogous to the objectively unreasonable failures of counsel in *Rompilla*.

Defendant next claims that counsel failed "to advocate [defendant's] case at sentencing," citing *United States v. Cronic*, 466 U.S. 648 (1984). *Cronic* actually works against defendant because in that case, the Supreme Court found that counsel *had* effectively advocated his client's case, even though counsel had limited access to trial witnesses and less than a month to prepare for trial in a bank fraud case involving voluminous documentary evidence. *Id*. at 663-64. Here,

counsel had been defendant's attorney of record for more than nine months before the sentencing hearing, and he was defendant's counsel of record at the suppression hearing that was the best hope for defendant's case.  Further, the transcript of the sentencing hearing shows that counsel not only reminded this court that defendant had reserved his right to appeal the suppression issue, counsel also asked this court to recommend substance abuse treatment and placement near defendant's family in California.  The record therefore demonstrates that counsel actually did take steps to advance defendant's cause before and during sentencing, and defendant has not alleged specific facts to the contrary.  Accordingly, defendant's appeal to *Cronic* is unconvincing.

Finally, defendant relies on *Penson v. Ohio*, 488 U.S. 75 (1988) for the proposition that prejudice may be presumed once defendant has established that counsel was absent.  In *Penson*, the court allowed counsel to withdraw before filing an appellate brief, and no new counsel was appointed to represent the defendant during his appeal.  *Id*. at 78-79.  In this case, defendant's claim that counsel's failure to move this court to consider a role reduction amounted to a complete absence of counsel during sentencing is flawed because the record is clear that counsel actually was present and active during sentencing and every other critical stage of defendant's case.  Therefore, defendant may not rely on the

8

presumption of prejudice at work in *Penson* to circumvent his burden of establishing that counsel's decision or omission fell below an "objective standard of reasonableness."

This court finds the government's conclusion that counsel's failure to move for role reduction was trial strategy more persuasive for four reasons. First, defendant lodged no objection to the PSR before sentencing or during this court's announcement of the tentative sentence. Therefore, this court believes that defendant was actually content at sentencing with the consideration he was receiving in exchange for his plea. Second, counsel affirmed at sentencing that the proposed length of sentence, which had no role reduction factored in, "conform[ed] to what [defendant and counsel] anticipated as a result of the plea agreement." This statement strengthens this court's conclusion that defendant was aware and content that no role reduction would be considered. Third, the statements defendant made to police after his arrest failed to identify with particularity any other individual who was more culpable than defendant. Given his previous involvement with his Alabama and California contacts, this court believes that defendant's failure in this regard indicates that he was hiding the true identities of his co-conspirators, which precludes his entitlement to a role reduction. Fourth, counsel's decision not to move for role reduction may well have been aimed at

preserving the plea agreement. *See, e.g.*, *Santiago-Diaz v. United States*, 299 F.

Supp.2d 293, 301 (S.D.N.Y. 2004) (finding failure to request minor role reduction

an effort to preserve plea agreement where reduction was precluded by agreement).

Strategic decisions are clearly beyond the scope of a habeas court's

review on an ineffective assistance of counsel claim.   *Sallahdin*, 308 F.3d at 1247.

Defendant cannot overcome the presumption that counsel's actions were

reasonable and strategic merely by repeating his disappointment with counsel's

performance because this court will not "second-guess" trial strategy decisions.

*Strickland*, 466 U.S. at 689.  It is not the government's burden to show that counsel

acted reasonably.  It is instead defendant's "heavy burden" to show that counsel

acted unreasonably.  *Fox*, 200 F.3d at 1295.  Because defendant has failed to carry

that burden, his motion shall be denied.

### Counsel's Actions Created No Prejudice

However, even assuming for the sake of argument that defendant has

shown that counsel's failure to move for a role reduction was unreasonable,

defendant's claim fails prejudice analysis.  Defendant argues that because he would

be serving a shorter sentence had counsel requested a role reduction, he has been

prejudiced.  (Dk.64-2, p.8).  The government argues that any failure on counsel's

part resulted in no prejudice because this court would not have granted the role

10

reduction even if counsel had so moved.  (Dk.69, p.14, 16).  Resolving these arguments requires resolution of the merits of defendant's role reduction claim.

U.S.S.G. § 3B1.2 contains two role reductions: one for minor role defendants and one for minimal role defendants.  Minimal role reductions are available "infrequently" to those defendants "who are plainly among the least culpable...of [a] group," as evidenced by their "lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others." U.S.S.G. § 3B1.2, comment. (n.4).  Minor role reductions, on the other hand, are available to those defendants who are "less culpable than most other participants, but whose role could not be described as minimal."  *Id.*, comment. (n.5).  Neither role reduction is available unless a defendant can establish by a preponderance of evidence that he is "substantially less culpable than the average participant."  *Id.*, comment. (n.3(A)); *United States v. Onheiber*, 173 F.3d 1254, 1258 (10th Cir. 1999).  Courts analyze role reduction claims under a totality of circumstances approach.  U.S.S.G. § 3B1.2, comment. (n.3(C)); *see United States v. James*, 157 F.3d 1218, 1219 (10th Cir. 1998) (holding that determining defendant's role is a fact question).

Defendant will not be entitled to a role reduction under § 3B1.2 merely because he was the least guilty member of a conspiracy.  *United States v.*

11

*Lockhart,* 37 F.3d 1451, 1455 (10th Cir. 1994).  Instead, this court looks outside

the boundaries of the immediate conspiracy and compares defendant's

participation to that of the "average participant" in the same type of crime.

U.S.S.G. § 3B1.2, comment. (n.3(A)); *United States v. Caruth,* 930 F.2d 811, 815

(10th Cir. 1991).  To weigh relative culpability, defendant must offer evidence

about the identities and roles of his co-conspirators, and it is his burden to establish

his minor role in the offense.  *United States v. Harfst,* 168 F.3d 398, 401-02 (10th

Cir. 1999).

      In this case, defendant claims he is entitled to a role reduction because

he "was only a mule."  (Dk.64-2, p.9).  Defendant's role as a "mule" or courier

neither entitles him to a role reduction, nor precludes him from receiving a role

reduction.[2]  *See, e.g.*, *United States v. Montoya,* 24 F.3d 1248, 1249 (10th Cir.

---

[2]The government cites *United States v. Ballard*, 16 F.3d 1110, 1115 (10th Cir. 1994), and *United States v. Onheiber*, 173 F.3d 1254, 1258 (10th Cir. 1999), in support of the argument that "mules" should never receive role reductions because they play "indispensable" roles in the crimes they commit. (Dk.69, p.16).  However, in the Tenth Circuit, there is no per se rule for or against granting drug couriers or "mules" role reductions.  U.S.S.G. § 3B1.2, comment (n.3(A)) (2006); *and cf. United States v. Harfst*, 168 F.3d 398, 402-3 (10th Cir. 1999); *with United States v. Vargas-Islas*, 437 F.Supp.2d 1180, 1182 (D. Kan. 2006) (collecting authorities).  To the extent the government is arguing in favor of an extension of Tenth Circuit law to prevent all drug "mules" from receiving minor role consideration because of their "mule" status, this Court declines to consider the argument because Tenth Circuit law is sufficiently clear to resolve the instant action without reaching the merits of the government's position.

1994) ("Given the important function of couriers in drug distribution networks, we have recognized that couriers often are not minor participants"); *and United States v. Vargas-Islas*, 437 F. Supp. 2d 1180, 1182 (D. Kan. 2006) (finding no per se rule in the Tenth Circuit that couriers either are, or are not, entitled to minor role reductions).  Instead, in this Circuit, the following facts are relevant in a totality analysis to determine whether defendant was substantially less culpable than the average participant: 1) his knowledge or lack thereof concerning the scope and structure of the enterprise and of the activities of others involved in the offense; 2) his involvement in more than one transaction; 3) the distance he traveled and the amount of compensation he received; 4) the quantity of drugs entrusted to him; 5) whether he was hired specifically for the job or "duped" into delivering the drugs; 6) the level of planning required to transport the drugs; and 7) his involvement in the underlying scheme compared to his involvement in the offense of conviction. *Vargas-Islas*, 437 F. Supp. 2d at 1183 (citations and quotations omitted).

        To support its conclusion that defendant was not a minor role participant, the government directs this court's attention to paragraph fourteen of the PSR.  That paragraph contains part of a post-arrest debriefing the defendant completed with law enforcement:

> [Defendant] advised he was transporting the drugs for Jorge LNU, whom [defendant] provided a physical description of.  He advised that

he knew Jorge from a ranch they both worked at in California.
[Defendant] reported he did not know what kind of drugs, or how
much he was hauling.  He also stated his wife knew nothing about
them.  [Defendant] advised that he and Jorge had discussed hauling
drugs to Alabama. [Defendant] advised he had made a previous trip to
Cullman, Alabama and met with Luis LNU, Jorge's brother, to see if
[defendant] could successfully make the trip.  [ ] Jorge gave
[defendant] $800 to make the current trip to Alabama. [Defendant]
rented the vehicle in Burbank, California, and drove it to a car wash
on Venice Blvd. in Los Angeles, California, where Jorge took control
of it for about three hours.  Jorge returned the vehicle, and [defendant]
then picked up his wife and daughters.  He was directed to call Jorge
every night while on the trip, and Jorge was to give him Luis's phone
number when [defendant] got closer to Alabama. [...Defendant] would
meet Luis at an Exxon gas station outside Cullman, Alabama,
and...follow [Luis] to another location to unload the drugs.

(PSR, ¶ 14).  Defendant alleges no additional facts to controvert the facts in the

PSR.  Instead, he relies solely on his contention that he was a mere courier.

Analyzing the traffic stop which gave rise to his arrest and the

statements to police reproduced above, this court finds that defendant was not

"substantially less culpable than the average participant."  U.S.S.G. § 3B1.2,

comment. (n.3(A), (C)).  Under the *Vargas-Islas* framework, the determinative

facts in this case are: defendant's purposeful and intentional employment as a

"mule," his participation in planning and carrying out the crime, the distance and

amount of drugs involved, and the unusually small payment for hauling a relatively

large load of drugs a long distance.

First, defendant  admitted to police that before he made the trip, he

14

had discussed his employment as a "mule" with his California contact, Jorge.  This fact shows that defendant was not an unwilling participant.  On the contrary; defendant either actively solicited his employment or was a willing recruit.  Also, defendant rented the vehicle used to haul the drugs in his own name, and he brought his family along on the trip.  These facts show that defendant took steps to plan and facilitate the crime by providing an important piece of equipment and by including his wife and two children to provide a cover story.  Also, defendant's participation in planning the crime is evidenced by his previous trip to Alabama, presumably to work out the timing and the route, and his previous familiarity with his Alabama contact, Luis.

Second, this court is aware that 30 kilograms of methamphetamine has a street value of approximately $386,000.  This court does not believe that a "mule" would be entrusted with more than a quarter of a million dollars worth of methamphetamine unless that "mule" were dependable, reliable, and trusted by the other members of the conspiracy.  Moreover, defendant was employed to transport the drugs across the breadth of the United States from Burbank, California, to Cullman, Alabama - a trip of approximately 2000 miles when driven directly.  This trip was longer for defendant because he was taking an indirect route.  To get from Southern California to Alabama, defendant drove along Interstate 70 through Utah,

15

Colorado, and Kansas, presumably to avoid drug interdiction efforts along Interstate 40.  Given the length of the trip, the value of his cargo, and the indirect route defendant chose to travel, this court believes it unlikely that defendant was a first time courier or someone without a history of trust in the distribution ring.

Finally, this court believes that the eight hundred dollars defendant received to "make the trip" was not his final compensation.  Instead, this court believes that the eight hundred dollars was meant to cover travel expenses and possibly the car rental.  The quantity of drugs and the distance involved make it more likely that defendant was either going to share in the profits from the ultimate distribution of the methamphetamine in Alabama, or that he would be paid upon his return to California.  This court bases its conclusion on defendant's admission that he knew he was hauling drugs, on defendant's admission that he was going to help Luis unload the drugs once defendant arrived in Alabama, and on defendant's easy access to the drugs during the trip.  Further, this court believes it unlikely that a large-quantity distributor would entrust an inexperienced "mule" with approximately $386,000 worth of methamphetamine over 2000 miles for less money than it would take to pay for the car rental, fuel, and lodging and food expenses for defendant and his family on a round trip from California to Alabama.

**Conclusion**

16

Given these facts and conclusions, the court finds that defendant was not substantially less culpable than the average participant in this kind of crime. U.S.S.G. § 3B1.2, comment. (n.3(A)).  The government is therefore correct that this court would not have granted defendant a minor role reduction had he requested one.  Because defendant was ineligible for a minor role reduction, it follows that he would not have received a minimal role reduction either. Accordingly, even assuming arguendo that counsel was ineffective for not requesting a role reduction, defendant's claim fails the *Strickland* prejudice prong, and shall be dismissed.

IT IS THEREFORE ORDERED that defendant's Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255 is denied.

Dated this 2nd day of May, 2007, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

17